IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01633-RBJ

THE FOURTH CORNER CREDIT UNION, a Colorado state-chartered credit union,

    Plaintiff,

v.

FEDERAL RESERVE BANK OF KANSAS CITY,

    Defendant.

## ORDER

The Fourth Corner Credit Union seeks a mandatory injunction directing the Federal Reserve Bank of Kansas City to grant it a "master account." The bank in turn asks the Court to dismiss the case. The dispute arises from the current clash of state and federal law concerning the legality of marijuana. For the reasons discussed in this Order, this Court is unable to grant plaintiff the relief it seeks.

## BACKGROUND

In 2012 the people of the State of Colorado voted to amend the state's constitution to legalize recreational use of marijuana. Declaring it to be in the "interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom," the Colorado Constitution authorizes personal use of marijuana by persons 21 years of age or older. Art. XVIII, § 16(1). The amendment also authorizes the operation of marijuana-related facilities.

*Id.* at (4). Personal possession and marijuana-related facilities are subject to regulation by the Department of Revenue. *Id.* at (5).

Unsurprisingly, a substantial industry has arisen around the cultivation, processing, transportation, and sale of marijuana. Like other industries, these "marijuana-related businesses," often simply called "MRBs," have a need for banking services. However, despite legalization in Colorado and several other states, the cultivation and distribution of marijuana remains illegal under the Controlled Substances Act. 21 U.S.C. § 801 et seq. *See Gonzales v. Raich,* 545 U.S. 1, 13-14 (2005).[1] For that reason, perhaps among others, banking institutions have been reluctant to serve MRBs. Bills that would modify the federal prohibition have been proposed but not yet enacted.

In January 2014 several members of Colorado's congressional delegation sent a letter to Deputy Attorney General James Cole of the United States Department of Justice and to the Director of the Financial Crimes Enforcement Network ("FinCEN") of the United States Department of the Treasury, asking that they "expedite guidance that would enable licensed marijuana dispensaries and retail stores in Colorado to avail themselves of the banking system." Amended Complaint, ECF No. 24, at ¶27. The letter reported (and common sense confirms) that operation of MRBs on a cash-only basis created significant public safety concerns for customers and employees, while making regulation, auditing and tax collection more difficult. *Id.*

---

[1] Marijuana is a Schedule I controlled substance. 21 U.S.C. § 812(c). The possession, manufacture, distribution, or dispensing of marijuana (except in a manner authorized by the Controlled Substances Act) is illegal. 21 U.S.C. §§ 841 (a)(1), 844(a). Aiding and abetting the manufacture, distribution, and dispensing of marijuana is also illegal. 18 U.S.C. § 2. Likewise, transporting or transmitting funds known to have been derived from the distribution of marijuana is illegal. 18 U.S.C. § 1960.

Deputy Attorney General Cole responded with a memorandum dated February 14, 2014 that reiterated the Department of Justice's commitment, first expressed in an August 29, 2013 guidance document, to "enforcing the CSA consistent with Congress' determination that marijuana is a dangerous drug that serves as a significant source of revenue to large-scale criminal enterprises, gangs, and cartels." ECF No. 31-1 at 1. The Cole memorandum also noted that financial institutions that conduct transactions with money generated by marijuana-related conduct could face criminal liability under money laundering statutes and the Bank Secrecy Act. *Id.* at 2. The memorandum stated that United States attorneys should apply the same eight priorities identified in the earlier guidance document in determining whether to charge individuals or institutions with marijuana-related violations of federal law. *Id.* However, it repeated that the memorandum "does not alter in any way the Department's authority to enforce federal law, including federal laws relating to marijuana, regardless of state law." *Id.* at 3.

On the same date FinCEN issued a document entitled, "BSA Expectations Regarding Marijuana-Related Businesses," FIN-2014-G001, frequently referred to as the "FinCEN guidance." ECF No. 34-3. This document acknowledges that the Controlled Substances Act "makes it illegal under federal law to manufacture, distribute, or dispense marijuana," and it advises banking institutions, as part of their customer due diligence, to consider whether an MRB implicates one of the Cole memorandum priorities. *Id.* at 1, 3. Purporting to clarify how financial institutions can provide services to MRBs consistent with their Bank Secrecy Act obligations, it reminds such institutions that, "[b]ecause federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity," they must file a "suspicious activity report" on

activity involving an MRB. However, a more limited report may be filed if the institution reasonably believes that the business does not implicate one of the Cole memorandum priorities or violate state law. *Id.* at 3-4.

Some banking institutions have apparently elected to serve MRBs and to take their chances under federal law. However, that has by no means been a universal reaction to the Cole memorandum and the FinCEN guidance. The Amended Complaint attaches and quotes a press release from the Colorado Bankers Association which interprets those documents as inviting banks to serve MRBs "at your own risk" while emphasizing all of the risks. ECF No. 24 at ¶32. Indeed, the Association's President is quoted as stating that "[t]he only real solution is an act of Congress." Press Release at 2.

Nevertheless, in plaintiff's words, "ten courageous citizens" came together in March 2014 to "organize a Colorado state-chartered credit union to develop a robust anti-money laundering . . . program to comply with the newly issued FinCEN guidance and Cole memorandum and thereby provide much needed banking services to compliant, licensed cannabis and hemp businesses and to thousands of persons, businesses and organizations that supported the legalization of marijuana." ECF No. 24 at ¶35. On November 19, 2014 the Colorado Division of Financial Services granted The Fourth Corner Credit Union a state credit union charter pursuant to C.R.S. § 11-30-117.5(3). *Id.* at ¶52.

The newly minted credit union promptly applied to open a "master account" at the Federal Reserve Bank of Kansas City. Despite its name, the Bank is not a federal agency. Rather, it is a private corporation created by an Act of Congress and run by its own board of directors. Affidavit of Susan Zubradt, the Bank's Vice President of Supervision and Risk

Management, ECF No. 34-1, at ¶3.  Depository institutions can only access the Federal Reserve payments system through a master account or through a correspondent bank that has a master account.  ECF No. 24 at ¶53.  This access is necessary for the electronic transfer of funds.  Simply put, without this access The Fourth Corner Credit Union is out of business.

On July 16, 2015 the Bank denied the Credit Union's application for a master account, and this suit followed.  Plaintiff's position can be simply stated: it is entitled to open a master account pursuant to the Banking Act of 1935, as amended by § 107 of the Monetary Control Act of 1980, 12 U.S.C. § 248a(c)(2).  Applications are normally granted as a matter of course within a few days.  Plaintiff believes that the Bank was motivated by a desire to exclude it as a competitor for the marijuana industry's banking business.  Plaintiff moves for summary judgment on the statutory interpretation issue.  ECF No. 26.

In response and in its motion to dismiss the Bank makes three arguments.  ECF Nos. 31, 34.  First, it submits that Colorado's actions taken to facilitate the distribution of marijuana are preempted by federal law.  Second, it argues that this Court should not use its equitable powers to facilitate criminal activity.  Finally, it contends that the Credit Union misinterprets § 248a which only concerns the pricing of services provided by the Bank, not the Bank's obligation to provide a master account.  The dueling motions have been fully briefed.  The Court held oral argument on December 28, 2015.  The parties agree that there are no genuine issues of material fact in dispute, and that the issues can be decided as matters of law.

## CONCLUSIONS

I need not reach or decide the preemption issue.[2]  The problem here is that the Credit Union is asking the Court to exercise its equitable authority to issue a mandatory injunction.  But courts cannot use equitable powers to issue an order that would facilitate criminal activity.  *See, e.g., Cartlidge v. Rainey*, 168 F.2d 841, 845 (5th Cir. 1948) ("It is well settled that equity will not lend its aid to the perpetration of criminal acts.").  *Cf. Combs v. Snyder*, 101 F. Supp. 531, 532 (D.D.C 1951) *aff'd*, 342 U.S. 939 (1952) ("The complaint clearly implies, and plaintiff's counsel conceded in oral argument, that what plaintiff seeks is the intervention of the court for the protection of a criminal business.  Nothing is better settled than that it is within the discretion of a court of equity to deny its aid to one who does not come into court with clean hands.").

A similar issue was addressed by the Tenth Circuit Bankruptcy Appellate Court: "We agree with the bankruptcy court that while the debtors have not engaged in intrinsically evil conduct, the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes."  *In re Arenas*, 535 B.R. 845, 849-50 (10th Cir. BAP 2015).  The *Arenas* court added, "In this case, the debtors are unfortunately caught between pursuing a business that the people of Colorado have declared to be legal and beneficial, but which the laws of the United States—laws that every United States Judge swears to uphold–proscribe and subject to criminal sanction."  *Id.* at 854.

---

[2] It is clear, however, that Congress has the power to prohibit cultivation, distribution and use of marijuana notwithstanding compliance with state law.  *Gonzales,* 545 U.S. at 29.

Plaintiff attempts to give me comfort that, notwithstanding the oath I took to uphold the laws of the United States, I can grant the relief it seeks. First, plaintiff points out that the Monetary Control Act of 1980, itself a federal statute, states,

> *All Federal Reserve bank services covered by the fee schedule <u>shall</u> be available to nonmember depository institutions* and such services shall be priced at the same fee schedule applicable to member banks, except that nonmembers shall be subject to any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks.

12 U.S.C. § 248a(c)(2) (emphasis added). I agree with the plaintiff that the italicized language is not limited to pricing. Cases referencing § 248a appear to agree. *See, e.g., Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta,* 713 F.2d 1221, 1222 (6th Cir. 1983) ("services such as check clearing formerly provided to member banks only will be made available to all banks, regardless of whether or not they are members"); *Total Aviation Services, Inc. v. United Jersey Bank,* 626 F. Supp. 1087, 1090 (E.D.N.Y. 1987) (fees generated by Federal Reserve Bank of Kansas City's check-processing activities in New York did not create personal jurisdiction because they did no more than compensate for a statutorily mandated act under 12 U.S.C. § 248a). However, it is at least implicit that this statute does not mandate the opening of a master account that will facilitate activities that violate federal law.[3]

Recognizing that problem, plaintiff amended its complaint to specify that it intends to provide banking services "in strict accordance with state and federal laws, regulations and guidance." ECF No. 24 at ¶2. Thus, "if service of MRBs is authorized by state and federal law,"

---

[3] In its effort to persuade the Court to apply § 248a(c)(2), plaintiff argues that a court sitting in equity cannot ignore a statute enacted by Congress. ECF No. 26 at 7 n.23. But that is the point – this Court may not ignore Congress's present judgment that distribution of marijuana, and aiding and abetting such distribution, is illegal.

plaintiff will "charge credit union members that required enhanced monitoring service fees commensurate with the cost of the enhanced due diligence required by the FinCEN guidance and Cole memorandum." *Id.* at ¶37. But therein lies the rub. Plaintiff contends that the FinCEN guidance and Cole memorandum already provide federal authorization to financial institutions to serve MRBs.[4] Therefore, offering to serve MRBs only if authorized by federal law is something of a sleight of hand. The problem is, the FinCEN guidance and Cole memorandum do nothing of the sort. On the contrary, the Cole memorandum emphatically reiterates that the manufacture and distribution of marijuana violates the Controlled Substances Act, and that the Department of Justice is committed to enforcement of that Act. It directs federal prosecutors to apply certain priorities in making enforcement decisions, but it does not change the law.[5] The FinCEN guidance acknowledges that financial transactions involving MRBs generally involve funds derived from illegal activity, and that banks must report such transactions as "suspicious activity." It then, hypocritically in my view, simplifies the reporting requirements.

In short, these guidance documents simply suggest that prosecutors and bank regulators might "look the other way" if financial institutions don't mind violating the law. A federal court

---

[4] For example, in its summary judgment motion, plaintiff states, "Presently [the FinCEN guidance] authorizes all depository institutions to serve MRBs." ECF No. 26 at 3. It reaffirms this position in its response to defendant's motion to dismiss. ECF No. 35 at 3.

[5] *See also Feinberg v. C.I.R.*, No. 15-1333, 2015 WL 9244893, at *2 (10th Cir. Dec. 18, 2015) ("[I]t's true . . . that two consecutive Deputy Attorneys General have issued memoranda encouraging federal prosecutors to decline prosecutions of state-regulated marijuana dispensaries in most circumstances. But in our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime.").

cannot look the other way.  I regard the situation as untenable and hope that it will soon be addressed and resolved by Congress.[6]

**ORDER**

Plaintiff's motion for summary judgment, ECF No. 26, is denied.  Defendant's motion to dismiss, ECF No. 31, is granted.  This civil action is dismissed with prejudice.  As the prevailing party the defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 5th day of January, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[6] Plaintiff anticipates that MRBs will constitute a numerical minority of the credit union's membership, and that the majority of the members will be persons and institutions who support legal marijuana. Perhaps so, but service of MRBs is a core purpose of the institution and is the basis for the concerns about public safety, regulation and taxation. The parties could agree that plaintiff would not accept MRB members unless and until the Congress expressly amends the law and possibly resolve their impasse. But they have been unwilling to do so to date, and a resolution on that basis is beyond the issue presented to this Court.